## THE INDIANA.

*(District Court, E. D. Pennsylvania.  January 13, 1885.)*

1. SALVAGE—AMOUNT, HOW DETERMINED.

 What is a proper allowance for salvage is a question for the sound discretion of the court, to be determined by a consideration of the time, labor, expense, and risk expended and incurred by the salvors, and the value of their services.

2. SAME—STEAMER NEAR BURNING PIER—COMPENSATION OF TUGS.

 An iron steam-ship, with about 30 men on board, and 45 pounds of steam on her donkey-engine, was lying next to a pier that caught fire, endangering the steamer, and, as a precautionary measure, the captain summons two tugs to render assistance, and they remained by her for several hours. The steamer could have moved, but not without some risk. *Held,* that the service rendered by the tugs was a salvage service, but that, under the circumstances, $1,100 would be sufficient compensation therefor.

3. SAME—EXCESSIVE CLAIM—COSTS.

 Although a vessel has been arrested for an exorbitant claim, costs may be allowed libelants where the respondent has made no offer of compensation whatever for the services rendered.

In Admiralty.

*Flanders & Pugh,* for libelants.

*Morton P. Henry* and *H. G. Ward,* for respondents.

BUTLER, J.  That the libelants rendered a salvage service I cannot doubt. The respondent (in the brief submitted) admits that it was "a technical salvage service, in respect that the parties were not connected with the ship, and there were circumstances which required

removal in consequence of peril, not for the purpose of a voyage."
When it is considered, however, that the vessel is constructed of iron,
that the sails were packed away, that she was without cargo, had ca-
pacity to move, (though limited,) that a number of tugs, capable and
willing to aid her, were at hand, the peril seems to have been very
slight, indeed.    What is a just compensation for the service it is dif-
ficult to determine.    There is no rule by which it can be accurately
measured.    The time, labor, expense, and risk expended and in-
curred, and enterprise shown, by the libelant, and the value of the
services to the respondent, must be considered.    An examination of
adjudicated cases involving salvage affords little, if any, aid.    Each
case stands upon its peculiar facts; and no two are alike.    What is
a proper allowance is a question for the sound discretion of the court.
In some of the reported cases the allowance, viewed in the light of
the reported facts, seems unreasonably small; while in others it seems
so grossly excessive as to look almost like robbery.    While the value
of the property saved is entitled to consideration, it is by no means
entitled to a controlling influence.

Considering the circumstances before adverted to,—the time, labor,
expense, and risk expended and incurred, and the enterprise shown
by the libelants, and the value of this to the respondent,—what com-
pensation should be allowed?    The time occupied was but a few hours;
the labor and expense were little, if any, greater than that involved
in ordinary towage for the same period; the risk involved (to the libel-
ants) was very slight, and the enterprise displayed was not extraor-
dinary.    If the respondent had been entirely without power to move,
and no other help than that of the libelants been within reach, the
value of the service to her would have been very great.    As we have
seen, however, she could move, (though probably with some risk,) and
abundant aid was at hand awaiting call.    In view of all the circum-
stances I believe $1,100 to be a just allowance.    I do not doubt that
the libelants would very cheerfully have contracted, in advance, to ren-
der the service for a smaller sum, and I think it improbable that the
respondent would have contracted to pay more, considering her sit-
uation, and the abundant means of escape at hand.    I do not think
the damage sustained by one of the tugs should be charged to the re-
spondent.    This occurred as she passed out of the slip in which she
lay when the fire broke out.    While it is possible she might have re-
mained in with safety, I cannot believe she would have stayed so near
the fire and taken the risk of destruction, even if the respondent had
not required aid.

I am asked to withhold costs from the libelants because of the ex-
travagant claim ($10,000) for which the vessel was arrested.    Were
it shown that the respondent manifested willingness to pay a reason-
able compensation, I would grant this request.    The arrest of ves-
sels for claims so exorbitant as to justify a conclusion that the libel-
ants know them to be grossly unjust is reprehensible and deserves

rebuke. But, in the absence of any offer of adequate compensation, and considering the ease with which the respondent here might have had relief by application to the court, I do not feel called upon to withhold costs. It is unnecessary to determine at this time how the sum awarded should be distributed among the several libelants, or whether the Toy is entitled to any part. It may not be improper, however, to say that upon the facts before me I would allow her nothing. A decree will be entered for $1,100.